# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** | |
| JASON RUSSEL MAYER, KASONDRA LYNN MAYER, | **Bankruptcy Case No. 09-04065-JDP** |
| **Debtors.** | |

_____

| | |
|---|---|
| JEREMY J. GUGINO, Trustee, | |
| **Plaintiff,** | |
| vs. | Adv. Proceeding No. 10-6006 |
| FROERER FARMS, INC., an Oregon corporation and CHASE FROERER, | |
| **Defendants.** | |

_____

### MEMORANDUM OF DECISION
_____

MEMORANDUM OF DECISION - 1

**Appearances:**

>Jeremy Gugino, Boise, Idaho, Chapter 7 Trustee, Plaintiff appearing *Pro Se*.
>
>John Hammond, BATT FISHER PUSCH & ALDERMAN, Boise, Idaho, Attorney for Defendants.

*Introduction*

In this adversary proceeding, the chapter $7^1$ trustee requests that the Court order an Oregon company to turn over a boat purchased from the debtors prior to bankruptcy. Before the Court are cross-motions for summary judgment in this interesting action involving whether Idaho's motor vehicle title act applies to transactions crossing state boundaries. Docket Nos. 10; 13. After a June 2, 2010 hearing, and supplementation of the record by the parties, the motions were taken under advisement. Having considered the submissions of the parties, the arguments of counsel, as well as the applicable law, this decision disposes of the motions.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION - 2

# I.
# Facts

The facts are, for the most part, not in dispute. On July 2, 2009, Defendant Froerer Farms, Inc. ("FFI"), acting through its agent, Chase Froerer ("Froerer"), purchased a 2004 Mastercraft X2 ski boat (the "Boat") from chapter 7 Debtors Jason and Kasondra Mayer. Docket Nos. 12, Ex. A; 12-2, ¶ 2. The purchase price for the Boat was $24,000; FFI paid in cash, no lender was involved, and the parties intended that FFI own the Boat free of any liens or encumbrances. Docket No. 12-2, ¶ 2.

On the sale date, there was an existing Idaho certificate of title for the Boat that had been issued in the name of Jason Mayer. Mr. Mayer endorsed the Idaho title certificate, assigning his interest in the Boat to FFI, and gave it to Froerer that day. Docket Nos. 12, Ex. B; 12-2, ¶ 3. The same day, Froerer took possession of the Boat and transported it on its trailer to Oregon. Docket No. 12-2, ¶ 4.

On July 14, 2010, Debtor Jason Mayer executed a "release of liability" form for the Boat and delivered it to the Idaho Department of

MEMORANDUM OF DECISION - 3

Transportation.  Docket Nos. 12, Ex. C; 12-2, ¶ 5.  After the purchase, FFI placed Oregon dealer license plates on the trailer, and the Boat has remained in Oregon exclusively, save for a small amount of time in November, 2009, during which it was returned to Idaho to undergo repair work and certain improvements.  Docket Nos. 12, Ex. D; 12-2, ¶¶ 6-7, 9.

Defendants have insured the Boat, Docket Nos. 12, Ex. E; 12-2, ¶ 8, and have offered the Boat for sale through M & M Auto, an Oregon licensed auto dealer and affiliate of FFI.  No offers to purchase it have been made, and the Boat remains in FFI's possession in Oregon.

On December 23, 2009, Debtors filed a chapter 7 bankruptcy petition.  They disclosed the sale of the Boat in their Statement of Financial Affairs.  Bankr. Docket No. 1.  At the time of filing, the Boat remained titled under the Idaho certificate of title, and no Oregon certificate of title had been applied for by, or issued to, FFI.  Docket No. 12-2, ¶ 16.  Defendants applied for an Oregon boat title on January 15, 2010.  *Id*. at ¶ 17.

On January 16, 2010, Trustee filed this adversary proceeding against

MEMORANDUM OF DECISION - 4

Defendants FFI and Froerer. He seeks this Court's judgment avoiding Defendants' interest in the Boat pursuant to § 544(a); turnover of the Boat under § 542(a); and, if any postpetition transfer of the Boat occurred, whether through issuance of a new title or by sale to a third party, avoidance of that transfer as an unauthorized postpetition transfer pursuant to § 549(a).

Trustee filed a motion for summary judgment on May 3, 2010; Defendants responded and filed a cross motion for summary judgment on May 24, 2010.

## II.

### Summary Judgment Standard

Summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Civil Rule 56(c)(2), incorporated by Rule 7056. *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008). The Court does not weigh evidence in resolving such motions, but

MEMORANDUM OF DECISION - 5

rather determines only whether a material factual dispute remains for trial. *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *Jones v. State Farm Mut. Auto Ins. Co. (In re Jones)*, 401 B.R. 456, 460 (Bankr. D. Idaho 2009).

A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party and a fact is "material" if it might affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)); *In re Jones*, 401 B.R. at 460. The initial burden of showing there is no genuine issue of material fact rests on the moving party. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998); *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000). If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

**III.**

MEMORANDUM OF DECISION - 6

## Analysis and Disposition

There are no genuine issues of material fact; the questions presented by the motions involve only issues of law, and disposition of those issues via summary judgment is appropriate.

A. <u>Choice of Law</u>.

The initial, critical question presented in this contest is whether Idaho or Oregon law controls the legal status of FFI's interest in the Boat. The parties agree that this Court's analysis in *In re Shradley*, 03.1 I.B.C.R. 7 (Bankr. D. Idaho 2003), is applicable to this contest.

In *Shradley*, the Court consulted the Restatement (Second) of Conflict of Laws ("Restatement"), and applied a collection of factors to determine which of two state titling schemes would settle the issues arising from the debtor's prebankruptcy motor vehicle transaction. In particular, the Restatement factors helped the Court to decide which of the two states had the most significant relationship to the matters at issue. Those factors are:

    (a) the needs of the interstate and international systems,
    (b) the relevant policies of the forum,
    (c) the relevant policies of other interested states and the

MEMORANDUM OF DECISION - 7

>   relative interests of those states in the determination of the particular issue,
>   (d) the protection of justified expectations,
>   (e) the basic policies underlying the particular field of law,
>   (f) certainty, predictability and uniformity of result, and
>   (g) ease in the determination and application of the law to be applied.

*In re Shradley*, 03.1 I.B.C.R. at 7 (citing Restatement § 6(2)).  A similar analysis is helpful here.  After considering these factors, the Court concludes that the most significant contacts are with Idaho.

The subject transaction (*i.e.*, the sale of the Boat) took place in Idaho. The Boat was, physically, in this state at the time of the transaction, owned by Idaho residents.  Defendants traveled to Idaho to complete the sale, and the purchase money changed hands in Idaho.  Defendants returned the Boat to Idaho to have it repaired and improved.

At the time of the sale, the Boat was, and had been for some time, titled in Idaho, a condition that, for their own reasons, Defendants allowed to continue for many months afterward.[2]  It is unclear on this record where

---

[2] Defendants insist that they intended to resell the Boat through the affiliate company, and as a dealer, it was not necessary to have a new, Oregon title certificate issued for the Boat.  While the Court does not doubt Defendants'

MEMORANDUM OF DECISION - 8

Defendants intended the Boat to eventually be used, as they explained that they hoped to promptly resell it.  So while the "contacts" with Idaho arising from this transaction are significant, any contacts with Oregon were relatively minimal, except that the Boat was taken there after purchase by its Oregon-resident new owner.

A comparison of the impact of this transaction on the policies of each state is equivocal.  Oregon and Idaho each have vehicle titling laws which apply to boats, and both of these statutes are designed to achieve the same result:  a uniform method by which the owner of a vehicle may be legally, reliably, promptly and publically established.  *Hopkins v. Brasseaux (In re Saunders)*, 08.1 I.B.C.R. 16, 17 (Bankr. D. Idaho 2008) ("The policy promoted by the Idaho motor vehicle title system, as implemented by the case law, protects those who rely upon the certificate of title to determine ownership or other rights in a vehicle.")  Obviously, boats and other vehicles are bought and sold every day.  Absent a uniform mode of transferring title and by which the public may determine or confirm the

---

explanation, it is, under these circumstances, of no moment.

MEMORANDUM OF DECISION - 9

current or new owner, confusion, fraud and damage could result.

Another factor for the Court to consider is ease in the determination and application of the law to be applied. This Court is very familiar with Idaho's vehicle titling law, and has applied it on numerous occasions. The Court has no reported experience with the Oregon title laws.

Finally, the Court should consider the parties' expectations, as well as the factor of certainty, predictability and uniformity of result. Without question, the expectations of both the Defendants and Debtors were that the Boat was sold, ownership passed from Debtors to FFI, with Defendants to have immediate possession of the Boat. Arguably, this should lead the Court to favor application of the laws of Defendants' home state, and not the sellers' state. However, were the Court to give strict heed to the parties' expectations, the certainty and uniformity promoted by application of the Idaho vehicle titling law to a Boat located in this state would be undermined. The Court has previously commented on the legislative policy promoted by Idaho's titling statute:

> This is not the first instance in which the

MEMORANDUM OF DECISION - 10

> "purported equities" of a case must bow to the policy of the Legislature. In *Mason*, the court explained that by adopting a comprehensive system of registering ownership interests in titled vehicles, the Idaho legislature has statutorily defined the equities. That system provides protection to anyone interested in owning vehicles in Idaho. The system also serves to give constructive notice to interested persons of all ownership interests in the titled vehicle. Owners and creditors alike are entitled to rely upon the veracity of the state's motor vehicle records. As this court has previously stated, it would be inappropriate to make "judicial exceptions to the operation of this thoughtful scheme."

*In re Saunders*, 08.1 I.B.C.R. at 17 (internal citations omitted). Under these facts, the Court concludes that predictability, certainty and uniformity should weigh heavier in this context than mechanical obedience to the parties' expectations.

From this analysis of the *Shradley* factors, the Court concludes that the scales tip markedly in favor of the application of Idaho law. This outcome is also in accord with a recent decision by Chief Judge Myers. *See*

MEMORANDUM OF DECISION - 11

*Gugino v. Rechenmacher (In re Russell)*, Adv. Case No. 08-06089-TLM.[3] In *Rechenmacher*, the debtors sold a vehicle in Idaho to the Rechenmachers, who were Nevada residents. The debtors retained possession of the vehicle until the buyers completed the purchase price installments, at which time the debtors delivered the vehicle and the endorsed certificate of title to the Rechenmachers via a relative in Idaho. When the debtors later filed for bankruptcy, the vehicle remained in Idaho, and the certificate of title was still in debtors' name. The chapter 7 trustee sought turnover of the vehicle, as he has in this case. In resolving the question of whether Idaho or Nevada law should control the legal issues, the Court applied the factors from *In re Shradley*, and held that Idaho law applied, despite the parties' intentions, and that the vehicle was property of the debtors' bankruptcy estate. Transcript at 19, Docket No. 17.

Although the facts are not precisely the same, this Court concurs with the analysis expressed in *Rechenmacher*, and holds that the

---

[3] A transcript of the Court's oral decision was lodged by Trustee in the docket in this action at Docket No. 17.

MEMORANDUM OF DECISION - 12

Defendants' intent and the buyers' residence in Oregon are not enough to compel application of Oregon law. Accordingly, the Court will apply Idaho law.

B. <u>Ownership of the Boat</u>.

The remainder of the analysis is straightforward. Under Idaho's Vessel Titling Act, the state issues title certificates for boats in the same manner, and with the same legal attributes, as those issued for motor vehicles. *See* Idaho Code §§ 67-7039 – 7041. Specifically, the statute provides that "[a]ll titling procedures for vessels shall be governed by title 49, Idaho Code. Unless otherwise provided, the term 'vessel' shall be interchangeable with the term 'vehicle' throughout title 49, Idaho Code, for the purposes of vessel titling . . . ." Idaho Code § 67-7039(3). *See also* Idaho Code § 49-501A ("The procedures provided in this chapter shall apply to all vessel titling programs referenced in chapter 70, title 67, Idaho Code. Unless otherwise provided, any reference to 'vehicle' in this chapter shall also mean 'vessel.'") Thus, it is clear that Idaho's motor vehicle titling procedures apply to watercraft, and in particular, to the Defendants'

MEMORANDUM OF DECISION - 13

purchase of the Boat.

    Idaho Code § 49-503 provides, in relevant part:

> Except as provided in sections 49-502, 49-510 through 49-512 and 49-514, Idaho Code, no person acquiring a vehicle from the owner, whether the owner is a dealer or otherwise, shall acquire any right, title, claim or interest in or to the vehicle until he has issued to him a certificate of title to that vehicle, . . .

Thus, according to the Idaho statute, no party acquires an ownership interest in a titled boat or vehicle, until a certificate of title is issued naming that party as the owner. Idaho Code § 49-503; *In re Woods*, 08.2 I.B.C.R. 61, 62 (Bankr. D. Idaho 2008); *In re Saunders*, 08.1 I.B.C.R. at 17; *Hopkins v. Cummins (In re Mason)*, 06.2 I.B.C.R. 17, 19 (Bankr. D. Idaho 2006). This rule is strictly enforced, as the Court in *In re Mason* explained:

> This Court has previously observed that Idaho's motor vehicle title law "expresses a legislative policy that a motor vehicle maybe owned by only one person at any one time – the party whose name appears on the official certificate issued by the State." Moreover, the "Idaho courts, as well as this Court, [have] applied the requirements of this statute strictly in the past."

MEMORANDUM OF DECISION - 14

*In re Mason*, 06.2 I.B.C.R. at 19 (internal citations omitted); *see also Northland Ins. Co. v. Boise's Best Autos & Repairs*, 970 P.2d 21, 25-26 (Idaho Ct. App. 1997), *rev'd in part on other grounds*, 958 P.2d 589 (Idaho 1998)); *Latham Motors, Inc. v. Phillips*, 851 P.2d 985, 991 (Idaho Ct. App. 1992) ("The language of [Idaho Code § 49-503] quoted above is clear and unambiguous in providing that the owner of a vehicle is one who holds legal title to the vehicle, . . ."). Moreover,

> the burden of securing a certificate of title to protect a beneficial interest in a vehicle is on the buyer . . . [and] under Idaho's Motor Vehicle Act, any expansion of the concept of ownership beyond that reflected on the certificate of title should be limited to situations involving civil liability and insurance.

*In re Shradley*, 03.1 I.B.C.R. at 8-9 (citing *Northland Ins. Co. v. Boise's Best Auto's & Repairs*, 970 P.2d 21, 26 (Idaho Ct. App. 1997), *rev'd in part on other grounds*, 958 P.2d 589 (Idaho 1998)).

In this case, Debtor Jason Mayer complied with Idaho's titling requirements and had the Boat properly titled in his name. Upon the sale of the vessel, he endorsed the certificate of title assigning his interest to

MEMORANDUM OF DECISION - 15

FFI, and gave that title certificate to FFI. It was FFI's burden to either obtain a new Idaho certificate of title listing it as the owner of the Boat, or to supercede Jason Mayer's title, presumably by titling the Boat in Oregon. FFI did neither,[4] and as a consequence, on the date Debtors filed their bankruptcy petition, the Boat was still titled in Jason Mayer's name. As the record owner under Idaho law, under the broad definition of estate property in § 541(a), the Boat was property of the bankruptcy estate, despite the fact that this is not what either Defendants or Debtors intended or expected.

Defendants contend that the fact that they placed dealer plates on the Boat, and had it available for sale, somehow alters the outcome here. This is not so. First, Idaho's titling law imposed what amounts to a bright-line rule which is strictly construed: a buyer obtains no right, title, claim or interest in a vehicle until a certificate of title issues with the buyer's name on it. The fact that Defendants put Oregon dealer plates on the Boat

---

[4] In fact, Froerer stated in his affidavit that FFI never intended to obtain an Idaho certificate of title for the Boat, although it apparently applied to obtain an Oregon title on January 15, 2010. Docket No. 12-2, ¶¶ 13, 17.

MEMORANDUM OF DECISION - 16

can not overcome the statutory requirement to properly title the Boat.

Secondly, Defendants' dealer argument is untenable for another reason. FFI is the entity that purchased the Boat, acting through its authorized agent, Froerer. While FFI apparently thereafter attempted to sell the Boat through M & M Auto, there is no evidence that M & M Auto ever acquired any ownership interest in the Boat. Indeed, the record is devoid of any evidence establishing a legal affiliation between M & M Auto and FFI. *See* Docket No. 16, Ex. A. Giving possession of a titled boat to a dealer to attempt to sell does not cure any defect in the title. Even assuming FFI could retain possession of the Boat while at the same time utilizing M & M Auto's dealer plates, Idaho's titling laws compel the same result: Defendants hold no enforceable ownership interest in the Boat.

C. <u>Disposition of the Boat</u>.

Plaintiff, as trustee, contends that his rights to the Boat are superior to those of Defendants under the strong-arm powers of § 544. Section 544(a)(1) grants the trustee "the status of a creditor with a judicial lien on all property on which a creditor could have obtained a judicial lien,

MEMORANDUM OF DECISION - 17

whether or not such a creditor actually exists." *In re Mason*, 06.2 I.B.C.R. at 19 (quoting *Hopkins v. Gutknecht (In re Lewis)*, 04.3 I.B.C.R. 133, 135 (Bankr. D. Idaho 2004)); 11 U.S.C. § 544(a)(1).

In this case, had Debtors' judicial lien creditor seized the Boat on the petition date, its rights would have been superior to those of Defendants, who hold no enforceable right, title, claim or interest in the Boat under Idaho law. Because Plaintiff is vested with the same rights as that hypothetical lien creditor, Plaintiff's rights likewise trump those of the Defendants.

Plaintiff may avoid any interest claimed by Defendants in the Boat as a result of the sale by Debtors to FFI under § 544(a). Because the Boat is property of Debtors' bankruptcy estate, Defendants must turn over the Boat to Plaintiff pursuant to § 542(a).

///

///

///

## IV.

MEMORANDUM OF DECISION - 18

## Conclusion

The Court is sympathetic to Defendants' predicament in this case. FFI apparently purchased the Boat in good faith from Debtors. However, FFI's failure to diligently and promptly secure the transfer of the Idaho title has consequences, one of which is the inability of Defendants to enforce their rights in the Boat against Debtors' chapter 7 trustee. Plaintiff, as trustee, is entitled to avoid Defendants' interest in the Boat, and to possession of the Boat so it can be sold for the benefit of Debtors' creditors.

By separate order, the Court will grant Plaintiff's motion for summary judgment, at least in part[5], and will deny Defendants' summary judgment motion.

---

[5] The Court grants Plaintiff's summary judgment motion as to Counts 1 (§ 544(a)) and 2 (§ 542(a)) of his complaint. On this record, Count 3 of the complaint, wherein Plaintiff seeks to avoid any unauthorized postpetition transfer of the Boat under § 549, remains unresolved. Because neither party addressed the § 549 claim in their briefing, and the Court has no facts upon which to resolve that claim via summary judgment motion, no final judgment can be entered at this time. The Clerk will schedule a status conference in this action to determine whether Plaintiff intends to proceed with his § 549 claim.

Dated: July 19, 2010

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 20